RANDY S. GROSSMAN
Acting United States Attorney
OLEKSANDRA Y. JOHNSON
Assistant U.S. Attorney
California Bar No. 265442
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
Tel: (619) 546-9769
Email: Oleksandra.Johnson@usdoj.gov

GUSTAV W. EYLER
Director
LAUREN M. ELFNER
Trial Attorney
Maryland Attorney No. 1212110253
WEI XIANG
Trial Attorney
Florida State Bar No. 85604
U.S. Department of Justice
Consumer Protection Branch
450 Fifth Street, NW, Suite 6400
Washington, DC 20001
Telephones: (202) 305-7171/532-4140
Emails: Lauren.Elfner@usdoj.gov
Wei.Xiang@usdoj.gov

Attorneys for United States of America

**FILED MAR 0 2 2022**
**CLERK U.S. DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**
**BY ___ DEPUTY**

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TIMOTHY INGRAM, a/k/a Bleezy,<br><br>Defendant. | Case No. 21CR2216-CAB<br><br>PLEA AGREEMENT |

IT IS HEREBY AGREED between the plaintiff, UNITED STATES OF AMERICA, through its counsel, Randy S. Grossman, Acting United States Attorney, and Oleksandra Y. Johnson, Assistant United States Attorney, and Gustav W. Eyler, Director, and Lauren M. Elfner and Wei Xiang, Trial Attorneys, and Defendant TIMOTHY INGRAM a/k/a Bleezy, with the advice and consent of Christopher Chaney, counsel for Defendant, as follows:

I

**THE PLEA**

Defendant agrees to plead guilty to Count One of the Indictment charging Defendant, being a person employed by and associated with an enterprise which was engaged in, and the activities of which affected, interstate and foreign commerce, with knowingly and willfully conspiring to conduct and participate, directly and indirectly, in the conduct of the affairs of such enterprise through a pattern of racketeering activity beginning on or before November 1, 2019, and continuing until on or about October 14, 2020, within the Southern District of California and elsewhere, in violation of 18 U.S.C. § 1962(d).

In addition, the attached financial addendum shall govern forfeiture and restitution in this case.

II

**NATURE OF THE OFFENSE**

A.   ELEMENTS EXPLAINED

The offense to which Defendant is pleading guilty has the following elements:

1. There was an agreement among two or more persons to participate in an enterprise that would affect interstate commerce through a pattern of racketeering activity;

2. The defendant knowingly and willfully became a member of that agreement; and

3. The defendant or another member of the conspiracy agreed to commit two racketeering acts.

//

B.   ELEMENTS UNDERSTOOD AND ADMITTED - FACTUAL BASIS

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each element of the crime and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed:

1.  At all times relevant to the Indictment, there existed a criminal organization referred to hereinafter as "THE ENTERPRISE." THE ENTERPRISE constituted an "enterprise" as that term is defined under Title 18, United States Code, Section 1961(4), that is, an association of persons in fact. THE ENTERPRISE constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of THE ENTERPRISE.

2.  THE ENTERPRISE engaged in, and its activities affected, interstate commerce. In furtherance of a nationwide "grandparent scam" that targeted elderly Americans, members and associates of THE ENTERPRISE engaged in extortion, fraud, and money laundering. Members and associates contacted elderly victims, usually by telephone, and impersonated a grandchild, other close relative, or friend of the victim. Members and associates falsely convinced the victims their relatives were in legal trouble and needed money to pay for bail, pay medical expenses for car accident victims, or prevent additional charges from being filed. Through such extortion and fraud, members and associates induced elderly victims to each provide thousands to tens of thousands of dollars to purportedly help their grandchild, close relative, or friend. Members and associates obtained money from victims generally through in-person cash pick-ups, use of the mail and commercial carriers, cashier's checks, and wire transfers. Members and

Plea Agreement                               3                         Def. Initials T.T
                                                                       21CR2216-CAB

associates at times transferred the proceeds among each other or for conversion from fiat currency to cryptocurrency.

3. THE ENTERPRISE, through its members, associates, activities, and victims, operated in the Southern District of California and elsewhere. At least ten elderly victims who resided in San Diego County lost over $300,000 to THE ENTERPRISE. At least 70 elderly victims across the United States lost over $2 million to THE ENTERPRISE.

4. On or before November 1, 2019, defendant knowingly and willfully became a member and associate of THE ENTERPRISE and agreed with one or more other persons to participate in THE ENTERPRISE through a pattern of racketeering activity consisting of extortion, fraud, and money laundering.

5. Defendant INGRAM, both personally and through others, recruited and directed mules to receive deposits and transfers of money from victims into the mules' bank accounts. For example:

   a. On or about November 1, 2019, unknown males contacted N.G., an 82-year-old woman residing in Richardson, Texas, and fraudulently convinced N.G. that N.G.'s grandson was in jail in California and that N.G. needed to pay $20,000 bail money by wire transfer. After a mule ("Mule-1") received the wire transfer, INGRAM directed an intermediary ("Mule-2") to instruct Mule-1 to withdraw N.G.'s money from her bank account using multiple transactions, bank locations, and withdrawal amounts of $8,500 or less.

   b. On or about January 5, 2020, INGRAM solicited a mule ("Mule-5") for Mule-5's bank account information. On or about January 9, 2020, an unknown male contacted A.H, an 83-year-old woman residing in La Quinta, California, by telephone, claiming to be her

grandson. Her "grandson" stated that he had been arrested in Florida for drug possession, and needed A.H. to obtain a $16,000 cashier's check and deposit it to a bank account. That same day, A.H. deposited a $16,000 cashier's check to Mule-5's bank account. INGRAM later instructed Mule-5 on paying two coconspirators their $1,600 shares of those proceeds.

6. Defendant INGRAM, both personally and through others, recruited and directed mules to pick up cash from victims in the State of California. For example, on or about May 11, 2020, unknown persons contacted J.D., an 87-year-old woman residing in Oceanside, California, within the Southern District of California, and fraudulently convinced J.D. that J.D.'s granddaughter had been arrested following a vehicle collision and needed $9,000 in bail money, to be picked up from J.D. by a courier purportedly named "Ashley Sutton." INGRAM then arranged for a mule ("Mule-8"), using the "Ashley Sutton" alias, to pick up the cash from J.D.

7. Defendant INGRAM also directed the pickup of cash from victims outside the State of California. For example, on or about June 18, 2020, INGRAM directed a mule ("Mule-13") who flew from California to Texas to pick up $7,500 from victim P.S. in Garland, Texas.

8. As part of his participation in the affairs of THE ENTERPRISE, defendant INGRAM organized the criminal activity of five or more participants, including but not limited to codefendants Gifford and Owuor and Mule-2, Mule-5, Mule-8, and Mule-13.

9. Defendant admits and agrees that the actual and reasonably foreseeable loss that resulted from his participation in THE ENTERPRISE was approximately $2,182,455.

Plea Agreement 5 Def. Initials T.I.
21CR2216-CAB

III

**PENALTIES**

The crime to which Defendant is pleading guilty carries the following penalties:

    A.    a maximum 20 years in prison;

    B.    a maximum $250,000 fine;

    C.    a mandatory special assessment of $100;

    D.    a term of supervised release of up to three years. Failure to comply with any condition of supervised release may result in revocation of supervised release, requiring Defendant to serve in prison, upon revocation, all or part of the statutory maximum term of supervised release; and

    E.    forfeiture to the United States of any interest in, security of, claim against and property and contractual right of any kind affording a source of influence over the enterprise; and any property constituting or derived from any proceeds the defendant obtained from the racketeering activity.

In addition, Defendant shall be subject to an order of restitution to the victims of the offense requiring Defendant to repay such persons at least $1,932,507.93.

IV
**DEFENDANT'S WAIVER OF TRIAL RIGHTS AND UNDERSTANDING OF CONSEQUENCES**

This guilty plea waives Defendant's right at trial to:

    A.    Continue to plead not guilty and require the Government to prove the elements of the crime beyond a reasonable doubt;

    B.    A speedy and public trial by jury;

    C.    The assistance of counsel at all stages;

D.  Confront and cross-examine adverse witnesses;

E.  Testify and present evidence and to have witnesses testify on behalf of Defendant; and,

F.  Not testify or have any adverse inferences drawn from the failure to testify.

## V
### DEFENDANT ACKNOWLEDGES NO PRETRIAL RIGHT TO BE PROVIDED WITH IMPEACHMENT AND AFFIRMATIVE DEFENSE INFORMATION

Any information establishing the factual innocence of Defendant known to the undersigned prosecutor in this case has been turned over to Defendant. The Government will continue to provide such information establishing the factual innocence of Defendant.

If this case proceeded to trial, the Government would be required to provide impeachment information for its witnesses. In addition, if Defendant raised an affirmative defense, the Government would be required to provide information in its possession that supports such a defense. By pleading guilty Defendant will not be provided this information, if any, and Defendant waives any right to this information. Defendant will not attempt to withdraw the guilty plea or to file a collateral attack based on the existence of this information.

## VI
### DEFENDANT'S REPRESENTATION THAT GUILTY PLEA IS KNOWING AND VOLUNTARY

Defendant represents that:

A.  Defendant has had a full opportunity to discuss all the facts and circumstances of this case with defense counsel and has a clear understanding of the charges and the consequences of this plea. By pleading guilty, Defendant may be giving up, and rendered ineligible to receive, valuable government benefits and civic rights, such as the right to vote, the

right to possess a firearm, the right to hold office, and the right to serve on a jury. The conviction in this case may subject Defendant to various collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case; debarment from government contracting; and suspension or revocation of a professional license, none of which can serve as grounds to withdraw Defendant's guilty plea.

B. No one has made any promises or offered any rewards in return for this guilty plea, other than those contained in this agreement or otherwise disclosed to the Court.

C. No one has threatened Defendant or Defendant's family to induce this guilty plea.

D. Defendant is pleading guilty because Defendant is guilty and for no other reason.

## VII

### AGREEMENT LIMITED TO U.S. ATTORNEY'S OFFICE SOUTHERN DISTRICT OF CALIFORNIA

This plea agreement is limited to the United States Attorney's Office for the Southern District of California and the U.S. Department of Justice, Consumer Protection Branch, and cannot bind any other authorities in any type of matter, although the Government will bring this plea agreement to the attention of other authorities if requested by Defendant.

## VIII

### APPLICABILITY OF SENTENCING GUIDELINES

The sentence imposed will be based on the factors set forth in 18 U.S.C. § 3553(a). In imposing the sentence, the sentencing judge must consult the United States Sentencing Guidelines (Guidelines) and take them into account. Defendant has discussed the Guidelines with defense counsel and understands that the Guidelines are only advisory, not mandatory. The Court may impose a sentence more severe or less severe than otherwise applicable under the Guidelines, up to the maximum in

Plea Agreement      8      Def. Initials T.I.
                                              21CR2216-CAB

the statute of conviction. The sentence cannot be determined until a presentence report is prepared by the U.S. Probation Office and defense counsel and the Government have an opportunity to review and challenge the presentence report. Nothing in this plea agreement limits the Government's duty to provide complete and accurate facts to the district court and the U.S. Probation Office.

## IX

### SENTENCE IS WITHIN SOLE DISCRETION OF JUDGE

This plea agreement is made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B). The sentence is within the sole discretion of the sentencing judge who may impose the maximum sentence provided by statute. It is uncertain at this time what Defendant's sentence will be. The Government has not made and will not make any representation about what sentence Defendant will receive. Any estimate of the probable sentence by defense counsel is not a promise and is not binding on the Court. Any recommendation by the Government at sentencing also is not binding on the Court. If the sentencing judge does not follow any of the parties' sentencing recommendations, Defendant will not withdraw the plea.

## X

### PARTIES' SENTENCING RECOMMENDATIONS

A. SENTENCING GUIDELINE CALCULATIONS

Although the Guidelines are only advisory and just one factor the Court will consider under 18 U.S.C. § 3553(a) in imposing a sentence, the parties will jointly recommend the following Base Offense Level, Specific Offense Characteristics, Adjustments, and Departures:

    1. Underlying Base Offense Level    7
       [§ 2B1.1(a)(1)]

|     |                                                               |     |
| --- | ------------------------------------------------------------- | --- |
| 2.  | Loss Amount Exceeded $1,500,000 [§ 2B1.1(b)(1)(I)]            | +16 |
| 3.  | Ten or More Victims and Mass-Marketing [§ 2B1.1(b)(2)(A)(i), (ii)] | +2 |
| 4.  | Vulnerable Victim [§ 3A1.1(b)(1)]                             | +2  |
| 5.  | Large Number of Vulnerable Victims [§ 3A1.1(b)(2)]            | +2  |
| 6.  | Organizer [§ 3B1.1(a)]                                        | +4  |
| 7.  | RICO Base Offense Level [§ 2E1.1(a)(2)]                       | 33  |
| 8.  | Acceptance of Responsibility [§ 3E1.1]                        | -3  |

B. ACCEPTANCE OF RESPONSIBILITY

Despite paragraph A above, the Government need not recommend an adjustment for Acceptance of Responsibility if Defendant engages in conduct inconsistent with acceptance of responsibility including, but not limited to, the following:

1. Fails to truthfully admit a complete factual basis as stated in the plea at the time the plea is entered, or falsely denies, or makes a statement inconsistent with, the factual basis set forth in this agreement;
2. Falsely denies prior criminal conduct or convictions;
3. Is untruthful with the Government, the Court or probation officer; or
4. Breaches this plea agreement in any way.

C. FURTHER ADJUSTMENTS AND SENTENCE REDUCTIONS INCLUDING THOSE UNDER 18 U.S.C. § 3553

Defendant may request or recommend additional downward adjustments, departures, or variances from the Sentencing Guidelines under 18 U.S.C. § 3553. The Government will oppose any downward

adjustments, departures, or variances not set forth in Section X, paragraph A above.

D. NO AGREEMENT AS TO CRIMINAL HISTORY CATEGORY

The parties have **no** agreement as to Defendant's Criminal History Category.

E. "FACTUAL BASIS" AND "RELEVANT CONDUCT" INFORMATION

The facts in the "factual basis" paragraph of this agreement are true and may be considered as "relevant conduct" under USSG § 1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1).

F. PARTIES' RECOMMENDATIONS REGARDING CUSTODY

The Government will recommend that Defendant be sentenced within the advisory guideline range recommended by the Government at sentencing.

G. SPECIAL ASSESSMENT/FINE/RESTITUTION/FORFEITURE

1. Special Assessment

The parties will jointly recommend that Defendant pay a special assessment in the amount of $100.00 to be paid forthwith at time of sentencing. Special assessments shall be paid through the office of the Clerk of the District Court by bank or cashier's check or money order made payable to the "Clerk, United States District Court."

2. Fine

The parties will not recommend imposition of a fine due to Defendant's limited financial prospects and because the cost of collection, even taking into account the Inmate Responsibility Program, likely would exceed the amounts that could reasonably be expected to be collected.

3. Forfeiture and Restitution

Defendant consents to the forfeiture allegations of the Indictment and consents to the forfeiture of all properties seized in connection with this case, and to the entry of a forfeiture money judgment. Defendant further consents to the entry of a restitution order for the full amount of losses sustained by the victims in this case and for all losses for relevant conduct. The forfeiture and restitution are more fully set forth in the attached financial addendum.

H. SUPERVISED RELEASE

If the Court imposes a term of supervised release, Defendant will not seek to reduce or terminate early the term of supervised release until Defendant has served at least 2/3 of the term of supervised release and has fully paid and satisfied any special assessments, fine, criminal forfeiture judgment, and restitution judgment.

XI

**DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK**

Defendant waives (gives up) all rights to appeal and to collaterally attack every aspect of the conviction and sentence, including any restitution order up to $3.5 million. This waiver includes, but is not limited to, any argument that the statute of conviction or Defendant's prosecution is unconstitutional and any argument that the facts of this case do not constitute the crime charged. The only exceptions are 1) Defendant may appeal a custodial sentence above the high end of the guideline range recommended by the Government at sentencing (if USSG § 5G1.1(b) applies, the high end of the range will be the statutorily required mandatory minimum sentence), and 2) Defendant may collaterally attack the conviction or sentence on

the basis that Defendant received ineffective assistance of counsel. If Defendant appeals, the Government may support on appeal the sentence or restitution order actually imposed.

## XII

## **BREACH OF THE PLEA AGREEMENT**

Defendant and Defendant's attorney know the terms of this agreement and shall raise, before the sentencing hearing is complete, any claim that the Government has not complied with this agreement. Otherwise, such claims shall be deemed waived (that is, deliberately not raised despite awareness that the claim could be raised), cannot later be made to any court, and if later made to a court, shall constitute a breach of this agreement.

Defendant breaches this agreement if Defendant violates or fails to perform any obligation under this agreement. The following are non-exhaustive examples of acts constituting a breach:

1. Failing to plead guilty pursuant to this agreement;
2. Failing to fully accept responsibility as established in Section X, paragraph B, above;
3. Failing to appear in court;
4. Attempting to withdraw the plea;
5. Failing to abide by any court order related to this case;
6. Appealing (which occurs if a notice of appeal is filed) or collaterally attacking the conviction or sentence in violation of Section XI of this plea agreement; or
7. Engaging in additional criminal conduct from the time of arrest until the time of sentencing.

If Defendant breaches this plea agreement, Defendant will not be able to enforce any provisions, and the Government will be relieved of all its obligations under this plea agreement. For example, the Government may proceed to sentencing but recommend a different sentence than what it agreed to recommend above. Or the Government may pursue any charges including those that were dismissed, promised to be dismissed, or not filed as a result of this agreement (Defendant agrees that any statute of limitations relating to such charges is tolled indefinitely as of the date all parties have signed this agreement; Defendant also waives any double jeopardy defense to such charges). In addition, the Government may move to set aside Defendant's guilty plea. Defendant may not withdraw the guilty plea based on the Government's pursuit of remedies for Defendant's breach.

Additionally, if Defendant breaches this plea agreement: (i) any statements made by Defendant, under oath, at the guilty plea hearing (before either a Magistrate Judge or a District Judge); (ii) the factual basis statement in Section II.B in this agreement; and (iii) any evidence derived from such statements, are admissible against Defendant in any prosecution of, or any action against, Defendant. This includes the prosecution of the charge(s) that is the subject of this plea agreement or any charge(s) that the prosecution agreed to dismiss or not file as part of this agreement, but later pursues because of a breach by the Defendant. Additionally, Defendant knowingly, voluntarily, and intelligently waives any argument that the statements and any evidence derived from the statements should be suppressed, cannot be used by the Government, or are inadmissible under the United States Constitution, any statute, Rule 410 of the Federal Rules of

Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, and any other federal rule.

### XIII

### CONTENTS AND MODIFICATION OF AGREEMENT

This plea agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral. No modification of this plea agreement shall be effective unless in writing signed by all parties.

### XIV

### DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT

By signing this agreement, Defendant certifies that Defendant has read it (or that it has been read to Defendant in Defendant's native language). Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect.

//
//
//
//
//
//
//
//
//
//
//
//
//

XV

**DEFENDANT SATISFIED WITH COUNSEL**

Defendant has consulted with counsel and is satisfied with counsel's representation. This is Defendant's independent opinion, and Defendant's counsel did not advise Defendant about what to say in this regard.

RANDY S. GROSSMAN
Acting United States Attorney

2/1/2022
DATED

OLEKSANDRA Y. JOHNSON
Assistant U.S. Attorney

GUSTAV W. EYLER
Director

2/1/2022
DATED

LAUREN M. ELFNER / WEI XIANG
Trial Attorneys

1/26/22
DATED

CHRISTOPHER CHANEY
Defense Counsel

IN ADDITION TO THE FOREGOING PROVISIONS TO WHICH I AGREE, I SWEAR UNDER PENALTY OF PERJURY THAT THE FACTS IN THE "FACTUAL BASIS" SECTION ABOVE ARE TRUE.

1-26-22
DATED

TIMOTHY INGRAM a/k/a Bleezy
Defendant

Approved By:

/s/ Aaron P. Arnzen

AARON P. ARNZEN
Assistant U.S. Attorney